UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NEXTGEN INNOVATIONS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> AT&T SERVICES, INC., AT&T MOBILITY LLC, AND AT&T CORP., <br><br> Defendants. | Case No. <br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT
AGAINST AT&T SERVICES, INC., AT&T MOBILITY LLC, AND AT&T CORP.**

This is an action for patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq.*, in which Plaintiff NextGen Innovations, LLC ("Plaintiff" or "NextGen") makes the following allegations against Defendants AT&T Services, Inc., AT&T Mobility LLC, and AT&T Corp. ("Defendants" or "AT&T"):

**INTRODUCTION**

1. AT&T infringes United States Patent No. 8,238,754 (the "'754 patent") that relates to improvements to optical networking systems. Plaintiff is the exclusive licensee of the '754 patent.

**PARTIES**

2. NextGen is a Nevada limited liability company with its principal place of business at 5348 Vegas Dr. #396, Las Vegas, NV 89108. NextGen is the exclusive licensee of all right, title, and interest in the '754 patent.

3. On information and belief, AT&T Services, Inc. is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 208 South Akard St., Dallas, Texas 75202.

4. On information and belief, AT&T Mobility LLC is a limited liability company organized and existing under the law of Delaware, with its principal place of business at 1025 Lenox Park Boulevard NE, Atlanta, Georgia 30319.

5. On information and belief, AT&T Corp. is a corporation organized and existing under the laws of the State of New York, with a principal place of business at One AT&T Way, Bedminster, New Jersey 07921-0752.

6. On information and belief, AT&T owns and operates a foundry at 2900 W. Plano Parkway, Plano, Texas 75075. *E.g.*, https://about.att.com/story/2018/plano_foundry.html.

## JURISDICTION AND VENUE

7. This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8. This Court has personal jurisdiction over Defendants in this action because Defendants have committed acts within this District giving rise to this action and have established minimum contacts with this forum such that the exercise of jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice. Defendants, directly and through subsidiaries or intermediaries, have committed and continue to commit acts of infringement in this District by, among other things, importing, offering to sell, and selling products that infringe the '754 patent.

9. Venue is proper in this District under 28 U.S.C. §§ 1391(b)-(c) and 1400(b). Defendants are registered to do business in Texas. Additionally, upon information and belief, Defendants have transacted business in this District and have committed acts of direct and indirect infringement in this District by, among other things, making, using, offering to sell, selling, and importing products that infringe the '754 patent. Moreover, on information and belief, Defendants have regular and established places of business in this District, including at (1) 2900 W. Plano Parkway, Plano, Texas 75075 (*e.g.*, https://about.att.com/story/2018/plano_foundry.html); (2) 900 Guardians Way Allen, TX; (3) 5200 Legacy Dr., Plano, TX 75024; (4) 7010 Elm St., Frisco, TX 75034; and (5) 705 E Virginia St., McKinney, TX 75069.

10. In addition, there is at least one pending case against Defendants, *NextGen Innovations, LLC v. AT&T Services, Inc., et al.*, Case No. 2:22-cv-00308-JRG-RSP (E.D. Tex.), in which AT&T has not contested jurisdiction or venue.

## FACTUAL BACKGROUND

11. Walter Soto and Alexander Soto are brothers, and the inventors of the claimed subject matter described in the '754 patent. Walter Soto has a bachelor's degree in Electrical Engineering, and has worked in the telecommunications industry since 1991. Alexander Soto has a master's degree in Electrical Engineering, and has worked in the telecommunications industry since 2000. The Sotos are the principals of Plaintiff, NextGen Innovations, LLC. As a result of their novel and useful inventions, the United States Patent and Trademark Office ("USPTO") has, to date, granted approximately thirty-four patents to the Sotos, including all of the '754 patent.

12. For much of their careers, the Sotos worked for various engineering firms and defense contractors, including but not limited to Hughes Aircraft, Agere and AT&T, working on projects of various types in multiple subject matter areas such as signal processing, network

protocol processing, wireline communications, wireless communications, optical communications and application specific integrated circuit chip design.

13. Early in 2003, with the U.S. silicon and telecommunication industry moving its projects and offices overseas, the Sotos decided to start their own company with the intention of innovating and producing high quality products in the U.S. The Sotos initially directed their work on passive optical network technologies because they expected that deployments of such technologies would increase in the coming years, and that significant innovation in the space would be necessary and valuable. To this end, the Sotos worked to identify the most difficult and acute problems in the passive optical network-area. Because the Sotos recognized the value of their work, dedicating resources for patent protection for their innovations was a key business practice in their new company. This focus led to the filing of a number of patent applications, including provisional patent applications and utility patent applications.

14. In September 2003, the Sotos founded UBI Systems, Inc. to develop products and services for new enterprise services for passive optical LANs. The goal was to reduce the operational and capital expenses associated with enterprise-level fiber optic networks. For example, the Sotos sought to solve problems related to the elimination of Ethernet switches and copper-based Ethernet cables. Performance-wise, the Sotos believed they could develop and deploy solutions that would improve upon and replace existing enterprise solutions and, at worst, achieve performance parity with such systems while significantly reducing the electrical power consumed. The Sotos also believed that overall network security would be improved by their solutions, including, for example, eliminating security issues associated with traditional wiring closets by eliminating the need for such closets.

15. In approximately the first half of 2005, the Sotos began exploring other business models based on their expertise and innovations. In particular, the Sotos identified broadband access and related ecosystems as a space where their innovations would both add significant value and be attractive to potential investors. In May 2005, the Sotos founded iPON Systems, Inc. with the purpose of developing silicon and software products that reduced the operational and capital expenses associated with the deployment and maintenance of broadband access fiber optic networks.

16. One of the problems iPON sought to solve was how to scale passive optical network deployments. The Sotos believed that novel hardware and methods that allowed for the reuse of existing routers and switches would be beneficial. The Sotos sought to use small form-factor pluggable (SFP) modules that could effectively and efficiently convert a point-to-point SFP socket into a point-to-multipoint PON socket. Another problem iPON sought to solve was to eliminate the dependency on highly skilled technicians to deploy fiber optic networks. The Sotos believed that this problem could be addressed, at least in part, by reusing the wavelengths of a PON (passive optical network) to perform in-service optical time domain reflectrometry (OTDR) tests, for example, that could be controlled by a network operation center (NOC) or remotely by technicians. Yet another problem the Sotos believed could be solved by iPON was eliminating problems related to powering a PON infrastructure. The Sotos believed that existing copper transmission lines (twisted wire-pair or Coax cables) could be used to provide not only broadband communications but also the power necessary for various optical network-specific equipment such as optical network terminals (ONTs) and optical network units (ONUs). Another problem identified by the Sotos was the need to eliminate wavelengths and the associated optical-to-electrical and electrical-to-optical conversion components being proposed for future networks at the time. The Sotos

believed that m-ary technology could be used to solve this problem by increasing the number of bits per symbol in a given transmission.

17. To fund iPON's operations, the Sotos approached venture capitalists, self-funded, and sought partner companies to build an ecosystem of like-minded companies. For instance, the Sotos and iPON sought to build a network of partners that would build upon iPON's innovations to develop the necessary hardware and software components necessary to accomplish iPON's vision of lower cost and easy to deploy high performance fiber optic network product and services.

18. The efforts of the Sotos led to the development of an ecosystem of component suppliers, equipment vendors and end user service providers comprised of companies such as Finisar, Alcatel-Lucent, and AT&T.

19. For example, beginning approximately in April 2005, iPON began working with AT&T (through the AT&T Access Technology Labs team). AT&T performed an intensive review of iPON's proposed products and services solutions, including proposed capital expense and operation expense savings implicated by iPON's novel solutions. The AT&T Access Technology Labs team is responsible for technical requirements used for AT&T wireline and wireless broadband access networks deployments. Members of AT&T that iPON worked with included, but were not limited to, Raj Savoor (then general manager of AT&T Access Technology Lab), Steve Sposato (then Executive Director of AT&T Network Systems Engineering), Kent McCammon, Gene Edmon, Julie Lorentzen, and Estes Renee. AT&T recognized that iPON's proposed products and services solutions solved real problems, and iPON began to also work with a number of suppliers that could support deployments by AT&T, including but not limited to Alcatel-Lucent (now Nokia) and Finisar.

20.     iPON approached Alcatel-Lucent's Internet Products Division (IPD) in approximately the July 2005 timeframe. iPON and Alcatel-Lucent extensively discussed iPON's technology and innovations, including its development of novel PON technology to be integrated into Alcatel-Lucent's 7x50 family of switches and routers. In approximately August 2007, the companies agreed to partner in the development and sale of iPON's technology (along with a third company, Finisar). The parties agreed to a lab trial based on iPON's GPON silicon within an XFP optical transceiver provided by Finisar that plugged into one of IPD's 7x50 products. The goal was to use this work, as well as iPON's work with potential customers (such as AT&T and Verizon), to develop field trials as an early introduction of the novel GPON OLT functionality into Alcatel-Lucent's 7x50 family of switches and routers. Among others at Alcatel-Lucent, iPON worked with Basil Alwan (then-president of IPD), Ralph Ballart (then-IPD CTO), Sunil Khandekar (then-IPD switches product group lead), Kevin Macaluso (then-IPD service router product group lead), Ken Kutzler (then-IPD VP of Engineering), and Linda Garbanati. On information and belief, Nokia agreed to acquire Alcatel-Lucent in 2015 and Nokia closed the acquisition of Alcatel-Lucent in 2016.

21.     Many venture capitalists were impressed with iPON's technology and the ecosystem the Sotos were building, particularly given the entrepreneurial, self-funded nature of the Sotos' efforts. Indeed, iPON and the Sotos had poured significant resources into developing their innovations, including patenting their inventions, exploring partnership opportunities with various network suppliers and providers, and getting fabrication work quotes from large manufacturing firms such as the Taiwanese firm TSMC.

22.     Despite their efforts, the Sotos saw other companies, including former partners such as Finisar, Alcatel-Lucent and AT&T, bring their innovations to market. As a result, the Sotos

formed NextGen in October of 2018 for the purpose of licensing the significant and valuable patent portfolio protecting the innovations that they had conceived.

23. NextGen has complied with the marking and other requirements of 35 U.S.C. § 287 for the '754 patent.

## **COUNT I**

## **INFRINGEMENT OF U.S. PATENT NO. 8,238,754**

24. Plaintiff realleges and incorporates by reference paragraphs 1 through 22 as if fully set forth herein.

25. On August 7, 2012, the United States Patent and Trademark Office ("USPTO") duly and legally issued the '754 patent, entitled "System And Method For Pluggable Optical Modules For Passive Optical Networks." The named inventors are Alexander I. Soto and Walter G. Soto. A true and correct copy of the '754 patent is attached as Exhibit A.

26. On November 29, 2018, the Sotos granted Plaintiff an exclusive license to the '754 patent. Under the exclusive license, Plaintiff was granted all substantial rights in the '754 patent until its expiration date including, without limitation, the exclusive right to sublicense, sue for infringement and collect all past, present, and future damages.

27. The '754 patent relates to, among other things, optical fiber networks. The claimed invention of the '754 patent sought to solve problems with, and improve upon, optical networking systems. For example, the specification of the '754 patent teaches the following:

> Implementations of the invention may include one or more of the following advantages. A network manager in an optical local area network can provide switching functions of a hub, a switch or a router. A switch configuration in which network managers are aggregated enables a high performance network in a compact apparatus. Connectivity of network

managers and network client adapters to existing conventional routers and switches using industry standard form factor optical modules enables a high performance network upgrade with minimal new equipment. A network client switch can support multiple physical layer ports without necessarily requiring a Layer-2 MAC or switching elements and the associated routing tables and packet memory. The number of optical transceivers and switching elements used to sustain the same number of computing nodes in a LAN via a point-to-multipoint optically coupled network configuration is reduced, thus saving the majority of expense described above.

*See* '754 patent at 4:55-5:4. The specification also teaches the following:

> Aspects of an embodiment of the invention includes enabling Media Access Control (MAC), Transmission Convergence Layer (TC-Layer) and Physical Layer (PHY-Layer) functionality via a plurality of discrete electronic components in an optical module, which can interface to existing Physical Media Attachment (PMA) layer devices or to devices via the Media Independent Interface (MII). This enables a consolidation of a plurality of network equipment layers resulting in cost savings.

*See* '754 patent at 5:5-13.

28. The inventions claimed in the '754 patent solve various technological problems inherent in optical network systems including, among other things, (1) reducing capital expenditure costs for network operators, and (2) reducing hardware space and other requirements inherent in optical network systems.

29. On information and belief, AT&T makes, uses, offers for sale, sells, and/or imports certain products ("'754 Accused Products"), such as GPON, XGS, and 25GS-PON pluggable

devices, that directly infringe, literally and/or under the doctrine of equivalents, at least claim 1 of the '754 patent.

30. An example of the '754 Accused Products is shown in AT&T's "Watch and Learn" video posted at [https://www.att.com/support/article/u-verse-high-speed-internet/KM1377555 describing its BGW320 customer premises equipment product](https://www.att.com/support/article/u-verse-high-speed-internet/KM1377555). Exemplary screenshots demonstrating the sale of a '754 Accused Product with each BGW320 device are shown below:









On information and belief, AT&T purchases and resells '754 Accused Products from various vendors, including at least Nokia. *See* https://www.reddit.com/r/homelab/comments/pni3kg/so_i_recently_got_att_fiber_and_the_bgw_320500/ (



).

31. As another example, on information and belief, AT&T's 5G deployment utilizes the same fiber network as its residential customer premise equipment. For example, AT&T recently described its network at a high-level using the following illustration:



https://about.att.com/blogs/2023/satterlee-open-disaggregated-platforms.html. *See also* https://about.att.com/story/att_deploying_white_box_hardware_in_cell_towers.html (2018 press release describing AT&T's deployment of 60,000 white box routers with an ONAP operating system, and the integration of XGS-PON functionality into the ONAP operating system:

> For example, we are working to integrate the Open Networking Foundation's work on VOLTHA, the software powering our future XGS-PON broadband network, into ONAP. Passive optical networks like XGS-PON promise internet speeds up to 10 Gbps. By integrating VOLTHA within ONAP, we can expand trials into more cities and bring the service to customers more quickly.

). Accordingly, on information and belief, '754 Accused Products are also used in AT&T's base stations and/or cell site gateways.

32. As another example, AT&T advertises the use of Next-Gen Edge Routers and Cell Site Gateway Routers from UfiSpace. https://about.att.com/blogs/2023/satterlee-open-disaggregated-platforms.html. UfiSpace promotes the use of its hardware with the Tibit OLT MicroPlug product (an example of a '754 Accused Product) to provide pluggable OLT functionality. https://www.ufispace.com/company/blog/simpler-passive-optical-networks-with-

14

tibit-pluggable-olts. Therefore, on information and belief, '754 Accused Products are also used in AT&T's Next-Gen Edge Routers and Cell Site Gateway Routers.

33. AT&T also knowingly and intentionally induces infringement of at least claim 1 of the '754 patent in violation of 35 U.S.C. § 271(b). Through at least its previous relationship with iPON and the Sotos, and the filing and service of this Complaint, AT&T has had knowledge of the '754 patent and the infringing nature of the '754 Accused Products. Despite this knowledge of the '754 patent, AT&T continues to actively encourage and instruct its customers and end users (for example, through online customer-focused materials) to use the '754 Accused Products in ways that directly infringe the '754 patent. AT&T does so knowing and intending that its customers and end users will commit these infringing acts. AT&T also continues to make, use, offer for sale, sell, and/or import the '754 Accused Products, despite its knowledge of the '754 patent, thereby specifically intending for and inducing its customers to infringe the '754 patent through the customers' normal and customary use of the '754 Accused Products.

34. AT&T has also infringed, and continues to infringe, at least claim 1 of the '754 patent by selling, offering for sale, or importing into the United States, the '754 Accused Products, knowing that the '754 Accused Products constitute a material part of the inventions claimed in the '754 patent, are especially made or adapted to infringe the '754 patent, and are not staple articles or commodities of commerce suitable for non-infringing use. AT&T has been, and currently is, contributorily infringing the '754 patent in violation of 35 U.S.C. §§ 271(c) and (f).

35. The '754 Accused Products satisfy all claim limitations of one or more claims of the '754 patent. A claim chart comparing independent claim 1 of the '754 patent to a representative '754 Accused Product is attached as Exhibit B, which is hereby incorporated by reference in its entirety.

36. By making, using, offering for sale, selling and/or importing into the United States the '754 Accused Products, AT&T has injured Plaintiff and is liable for infringement of the '754 patent pursuant to 35 U.S.C. § 271.

37. As a result of AT&T's infringement of the '754 patent, Plaintiff is entitled to monetary damages in an amount adequate to compensate for AT&T's infringement, but in no event less than a reasonable royalty for the use made of the invention by AT&T, together with interest and costs as fixed by the Court.

38. AT&T's infringing activities have injured and will continue to injure Plaintiff, unless and until this Court enters an injunction prohibiting further infringement of the '754 patent, and, specifically, enjoining further manufacture, use, sale, importation, and/or offers for sale that come within the scope of the patent claims.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter:

a. A judgment in favor of Plaintiff that AT&T has infringed, either literally and/or under the doctrine of equivalents, the '754 patent;

b. A judgment and order requiring AT&T to pay Plaintiff its damages, costs, expenses, and pre-judgment and post-judgment interest for AT&T's infringement of the '754 patent;

c. A judgment and order requiring AT&T to provide an accounting and to pay supplemental damages to Plaintiff, including without limitation, pre-judgment and post-judgment interest;

d. A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Plaintiff its reasonable attorneys' fees against Defendants; and

e. Any and all other relief as the Court may deem appropriate and just under the

circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

Dated: June 1, 2023                     Respectfully submitted,

*/s/ Benjamin T. Wang*
 Benjamin T. Wang

Benjamin T. Wang
CA State Bar No. 228712
Email: bwang@raklaw.com
Irene Y. Lee
CA State Bar No. 213625
Email: ilee@raklaw.com
Andrew D. Weiss
CA State Bar No. 232974
Email: aweiss@raklaw.com
Paul A. Kroeger
CA State Bar No. 229074
Email: pkroeger@raklaw.com
Qi Tong
CA State Bar No. 300347
Email: ptong@raklaw.com
**RUSS AUGUST & KABAT**
12424 Wilshire Blvd., 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

Claire Abernathy Henry
Texas State Bar No. 24053063
Email: claire@wsfirm.com
Andrea L. Fair
Texas State Bar No. 24078488
Email: andrea@wsfirm.com
Chad Everingham
Texas State Bar No. 00787447
Email: ce@wsfirm.com
WARD, SMITH & HILL, PLLC
PO Box 1231
Longview, Texas 75606-1231
(903) 757-6400 (telephone)
(903) 757-2323 (facsimile)

Attorneys for Plaintiff
*NextGen Innovations, LLC*